†METROPOLITAN LIFE INSURANCE CO. v. GIERL.

COURT REFUSES TO DISTURB VERDICT WHEN A PARTY MAY HAVE A SECOND
CHANCE TO SET UP A HARSH DEFENSE.

> The doctrine of waiver is a harsh one and will not be applied, nor will a judg-
> ment, as against the weight of evidence, be disturbed, unless manifestly
> wrong, in order to give a party a second chance to set up a harsh and uncon-
> scionable defense.

ERROR to the Court of Common Pleas of Lucas county.

SCRIBNER, J.

This action was brought in the court below by Martha Gierl against
the Metropolitan Life Insurance Company, to recover upon two policies
of insurance, so-called, issued by said insurance company upon the life
of Cresant Fox. One of these policies of insurance was issued on June
1, 1891, and the second policy on July 22, 1891. The party whose life
was insured—Cresant Fox—died on August 15, 1892, and suit upon these
two policies was brought by Martha Gierl, the beneficiary named in these
policies, on November 11, 1893. The proofs of death, as they appear in
the case, were furnished on August 27, 1892—less than two weeks after
the date of the death. On the trial in the court of common pleas, there
was a verdict for the plaintiff, the beneficiary, Martha Gierl, for the
amounts payable by the terms of the policies, with interest after the date
when they became due. There was a motion for a new trial in the case,
which was overruled by the court and exceptions taken. The testimony
given in the case was embodied in a bill of exceptions, duly signed and
filed, and this petition in error is filed for the purpose of reversing the
judgment rendered by the court of common pleas. The assignments of
error in the case are as follows:

    1. Said court erred in not directing a verdict for plaintiff in error.

    2. Said court erred in overruling the motion of plaintiff in
error for a new trial.

    3. Said court erred in his charge to the jury in the trial of said
action.

    4. The facts set forth in the petition are not sufficient in law to
maintain the said action against plaintiff in error.

    5. Said court erred in the admission of evidence offered by the
defendant in error, to which the plaintiff in error objected.

    6. Said judgment was given for said defendant in error when it
should have been given for said plaintiff in error.

The principal questions arising in the case for our consideration may
be somewhat briefly stated, though, perhaps a little time may be required
in order to state our views of the rules of equity and the rules of law
governing the case upon the testimony in the bill of exceptions and the
action of the court as it there appears.

---

†Affirmed by Supreme Court without report January 4, 1898, Judge Shauck dis-
senting. 57 O. S., 671.

It appears from the testimony in the case, that the beneficiary named in the policies, Martha Gierl, was not in any manner related to Cresant Fox, the party whose life was insured. It does appear that she was the wife or a foster son (as he is called) of Cresant Fox. He was not her real son, but he had been taken by Cresant Fox in infancy and cared for, raised and treated as her son. It is contended by plaintiff in error here that the plaintiff below had no such insurable interest in the life of said Cresant Fox, the foster mother, as entitles her to become a beneficiary in a policy issued upon the life of Cresant Fox. It is not denied but that the woman herself, Cresant Fox, might, under her own application, take out a policy upon her life for the benefit of any person whom she might see proper to name; and it is contended on the part of Martha Gierl that, as the application was made, not by her, but by Cresant Fox; that the premium was paid for the benefit of the beneficiary, Martha Gierl—in short, that the beneficiary was not the applicant for the policy, but that the foster mother, Mrs. Fox, was the applicant and obtained the policies for the benefit of Martha Gierl. It is also claimed that upon the death of the decedent, Mrs. Fox, the contract of insurance limited the time within which an action should be brought upon the policies to six months. The action, in point of fact, was not brought until the expiration of about thirteen months from the death of the decedent.

Upon the allegations of the answer—to which I will briefly call attention—these contentions are a principally raised. Both policies are set out in the petition. In both of them is contained this provision:

"No suit shall be brought nor action commenced against said company under this policy until ten days shall have expired after the filing of proofs of death upon all the forms prescribed by the company in its home office, nor after six months from the date of death of the insured, it being understood and agreed that if any suit or action be commenced after said six months, the lapse of time shall be taken to be conclusive evidence against any claim, the provisions of any and all statutes of limitation to the contrary being hereby expressly waived."

In the answer the company admits many of the material matters alleged in the petition, and proceeds to assert, as I have stated:
*     *     "'That applications for said insurance were not made or signed by said Cresant Fox, and said insurance was procured by and solely for the use and benefit of said Martha Gierl. The said Martha Gierl is and was at the time of the procurement of said policies of insurance in no way related by kinship or blood ties to the said Cresant Fox, and said Martha Gierl had at said times and now has no interest in the life of said Cresant Fox, either pecuniary or otherwise, and said insurance was fraudulent and void.'"

The policies and the applications were attached. The latter appear upon their face to bear the signatures of Cresant Fox, and to be made for the benefit of Martha Gierl. Upon the testimony introduced in the case there was some controversy as to who these applications were signed by. Naturally they were not signed by Cresant Fox, because she was not able to write. But the testimony upon the part of the plaintiff is, that they were signed by the agent of the insurance company who was taking the application; that he subscribed her name, by her authority, to these applications; and it was utterly denied on the part of the plaintiff below that Martha Gierl had had anything to do with the affixing of the signature of the old lady to the applications, and her testimony is that the application was made in the presence of Mrs............

The answer proceeds to allege:

"Defendant further says that said insurance was procured by the said Martha Gierl upon representations made to this defendant for the purpose of procuring this insurance that said Cresant Fox was but sixty-three years of age when in truth and in fact the said Cresant Fox was at the time of the procurement of said policies nearly eighty years of age. Said Martha Gierl and said Cresant Fox well knew that said Cresant Fox was more than sixty-three years of age, and was nearly eighty years of age at the time said policies of insurance were applied for and were issued, but for the purpose of defrauding this defendant said Martha Gierl and said Cresant Fox willfully and falsely represented said Cresant Fox as sixty-three ye rs old."

The testimony shows that the plaintiff when she was inquired of as to her age—that they asked her when she was born, and she said she didn't know when she was born; but when asked how old she was, she stated that she was somewhere from sixty-three years old, and said: "My last birthday is sixty-three." Now, there is testimony tending to show that these applications were written, both of them, by the agent who was taking the application, and the testimony of the witness is that she gave her best opinion to the agent, that she must be from sixty-one to sixty-three years of age. The pith of the matter is, that the agent of the company who was present wrote upon the application what her age was, and that the answer that she gave to the inquiry of the agent, was rather an expression of her opinion, or judgment, or guess, as to what her age was, she having stated that she couldn't say when she was born, and the agent, in order to make short work of the matter, just simply stated that she was sixty three years old. That is one of the points relied upon here—that there was misrepresentation as to her age. The defendant pleads, in his answer, this limitation of six months, and, upon three propositions: (1). That the plaintiff had no insurable interest in the life of said Cresant Fox; (2). That there was misrepresentation as to her age; and (3). As to the six month's limitation, which had elapsed long before the action was brought, that the plaintiff was not entitled to recover.

The case was submitted to the jury upon instructions by the court upon all these propositions—it having been tried before Judge Pugsley, The judge in his charge to the jury states the questions that are involved. and says:

"The defendant in its answer admits the issuing of these two policies as alleged in the petition. It admits the death of Cresant Fox as alleged, and that the proofs of her death were duly furnished, as required by the terms of the policies; and also the defendant admits that all the premiums upon the policies were duly paid, as alleged; but the defendant alleges as a defense to the action, that both of these policies are void, and that no action can be maintained thereon, for the following three reasons: First, that the plaintiff, Martha Gierl, was not related to the deceased, Cresant Fox, and that she had no insurable interest in the life of Cresant Fox, and that therefore she ought not to be permitted to maintain this action upon these policies. That is the first of these three defenses. The second defense is, that in the written application for the insurance, which by the terms of the policies is made a part of the policies, it was represented that Cresant Fox was only 63 years of age; whereas, the defendant alleges, she was in fact nearly or about 80 years of age at that time. Therefore, by the second defense it is claimed that a false and fraudulent representation was made in the applications, which, under the

terms of the policies, vitiated and voided them. The third of these three defenses is, that by a condition of the policies it was provided that no suit or action can be maintained on them unless brought within six months after the death of Cresant Fox. She died, as is alleged, in the month of August, 1892, and this action was begun before the justice of the peace in the month of November, 1893, or a period of fourteen months after the death of Cresant Fox. And therefore it is claimed, under these defenses, that no action can be maintained."

And then the judge proceeds to give to the jury the rules applicable to the rights of the parties upon these three aspects of the case, and he instructs them very fully and very fairly as to the law bearing upon the propositions submitted. It is hardly necessary to read the instructions of the court to the jury in regard to these points; but the case was fairly submitted so far as the rights of all parties were concerned, and the jury rendered a verdict for the plaintiff below. A motion for a new trial was submitted and overruled and judgment rendered upon the verdict. Now, I would hardly be justified in stopping to read from the testimony in the case. The question here is—the motion for a new trial having been overruled—whether or not we find error in this action of the court in its disposition of the case in its rulings upon the testimony, instructions to the jury, and overruling of the motion for a new trial. Certainly we find not ground for reversing the case on any ruling in the course of the trial, or upon any instructions to the jury upon the questions which concern the rights of the parties.

The only question that could be insisted upon was that relating to whether or not the verdict was supported by the evidence, and, upon that point, upon all the testimony submitted in the case and the rules that should govern it, we do not feel that we ought to disturb this verdict. The doctrine of waiver, which is insisted upon here and pressed with a great deal of force, is a harsh and hard doctrine, and courts are inclined to apply it for the benefit of the assured where there is reasonable ground appearing in the record for its application, as stated by May in his work on Insurance, vol. 2, sec. 488. And I might say that in Abenethy v. Bank, 5 O. S., 266, the court refused to disturb a verdict, although in their judgment it was not supported by the evidence, for the reason that the defense which was insisted upon there sought the avoidance of a debt sued upon the ground that it was usurious, the plaintiff being one of the state banks of Ohio, and the defense being that in discounting some notes the bank had extorted usury. The jury having found against the defense, the court overruled a motion for a new trial and rendered judgment upon the verdict. The defendant below having gone to the Supreme Court upon a proceeding in error to reverse the judgment, upon the ground that it was not sustained by sufficient evidence, the objection was made by counsel representing the defendant in error that the court should not grant a new trial for the purpose of allowing a harsh defense to be made. It was said in the argument: "Courts never grant a new trial in order to give a second chance to the defendant to set up an unconscionable and harsh defense."

In this case, the defense, although perfectly legitimate, insisted upon a short statute of limitations, and, as upon all of the evidence admitted the jury have found against the defendant, it seems to us that the same rule might be applied properly to the motion to reverse the judgment on the ground that it was not supported by the evidence. Upon the whole, our conclusion is that this judgment should be affirmed, and without penalty.